**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**B. DOUGLAS WRIGHT,**

                **Plaintiff,**           **5:12-cv-378**
                                         **(GLS/TWD)**

        **v.**

**CITY OF ITHACA, NEW YORK et al.,**

                **Defendants.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Bosman Law Office | AJ BOSMAN, ESQ. |
| 6599 Martin Street | DANIEL W. FLYNN, ESQ. |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Stokes, Roberts Law Firm | ANNE-MARIE MIZEL, ESQ. |
| Pittsburgh Office | |
| 858 Kennebec Street | |
| Pittsburgh, PA 15217 | |
| | |
| Stokes, Roberts Law Firm | ARCH Y. STOKES, ESQ. |
| Atlanta Office | |
| 3593 Hemphill Street | |
| Atlanta, GA 30337 | |
| | |
| Stokes, Roberts Law Firm | PAUL E. WAGNER, ESQ. |
| Ithaca Office | |
| 903 Hanshaw Road | |
| Ithaca, NY 14850 | |
| | |
| City of Ithaca | PATRICIA M. O'ROURKE, ESQ. |
| Office of the City Attorney | |

108 East Green Street
Ithaca, NY 14850

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs B. Douglas Wright (hereinafter "Wright") and Melissa Wright commenced this action against defendants City of Ithaca, New York, Carolyn Peterson, Schelley Michell-Nunn, Edward Vallely, Lauren Signer, and John and Jane Doe defendants, pursuant to 42 U.S.C. §§ 1981 and 1983 as well as the New York State Human Rights Law[1] (NYSHRL) and the City of Ithaca Municipal Code (IMC), alleging discrimination based on race.[2] (*See generally* Compl., Dkt. No. 1.) Pending before the court are defendants' motion for summary judgment, (Dkt. No. 98), and motions by Wright seeking to amend his complaint, (Dkt. No. 114, Attach. 2), and to strike the declaration of John Barber, (Dkt. No. 121). For the reasons that follow, defendants' motion is granted in its entirety, and Wright's motions

---

[1] *See* N.Y. Exec. Law §§ 290-301.

[2] On May 15, 2012, this court granted in part defendants' motion to dismiss, and dismissed all of Melissa Wright's claims, as well as the claims against Signer. (Dkt. No. 14.) Accordingly, both were terminated as parties to this action. (*Id.*)

are denied.

## II. <u>Background</u>[3]

Wright, a Caucasian male, was hired as a police officer by the City of Ithaca in 1992. (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 98, Attach. 2.) He was promoted to sergeant in 1999. (*Id.* ¶ 2.) Shortly before Wright's hire, the City of Ithaca hired Marlon Byrd, an African-American, as a patrol officer in July 1991, (*id.* ¶ 7), and Byrd was promoted to sergeant in May 2005, (*id.* ¶ 10).

In 2008, Wright, Byrd, and others took a civil service examination for a promotion to lieutenant. (*Id.* ¶ 12.) Based on the results of the examination, Wright was one of three candidates considered eligible for the promotion. (*Id.*; Dkt. No. 112, Attach. 4 at 5.) Although Byrd was not initially one of the three eligible candidates, he became eligible when sergeant John Norman withdrew his name from consideration. (Dkt. No. 98, Attach. 5 at 18; Dkt. No. 112, Attach. 4 at 5, 7.)

The three candidates—Wright, Byrd, and sergeant Michael Watkins—were interviewed for the position. (Defs.' SMF ¶¶ 12-13; Dkt. No. 106 at 81-83; Dkt. No. 112, Attach. 4 at 7.) The interview committee

---

[3] Unless otherwise noted, the facts are not in dispute.

consisted of Chief of Police Vallely, Deputy Chief John Barber, union representative Jeff Huddle, and Michell-Nunn, the City's Human Resources Director.  (Defs.' SMF ¶ 13; Dkt. No. 106 at 51.)  Vallely was ultimately responsible for making the final decision, and, after interviewing the candidates, he sought guidance from Peterson, who at the time was the mayor of Ithaca, due to his struggle in making a decision.  (Defs.' SMF ¶ 14; Dkt. No. 98, Attach. 4 at 2-3; Dkt. No. 106 at 84-85; Dkt. No. 108 at 129-30.)  Peterson advised Vallely to make a matrix to lay out each of the candidates' qualifications for the job.  (Defs.' SMF ¶ 14; Dkt. No. 98, Attach. 4 at 3; Dkt. No. 107 at 31-32.)  Wright contends that, at some point during the deliberation process, Vallely spoke to Wright and told him that unless he could show "clear and convincing evidence" why Wright was the better candidate, he would "have to promote" Byrd.  (Dkt. No. 103, Attach. 1 at 53-54.)  Vallely could not recall uttering such statement.  (Dkt. No. 108 at 116.)

Ultimately, Wright was not chosen for the promotion, and it was instead given to Byrd, (Defs.' SMF ¶ 16; Dkt. No. 112, Attach. 4 at 7), despite what Wright claims were "serious criminal allegations" against Byrd, which defendants intentionally failed to properly investigate, (Compl.

4

¶ 23).  Vallely indicated that the reason he ultimately chose Byrd was his superior skill in "community policing," (Dkt. No. 108 at 126-28), in addition to his more extensive experience supervising officers on the line and his demonstrating leadership and ambition through the pursuit of advanced degrees and attendance at the FBI academy, (Dkt. No. 98, Attach. 4 at 3). Byrd was sworn in on March 5, 2009.  (Dkt. No. 98, Attach. 5 at 30; Dkt. No. 117, Attach. 9 at 2.)

Wright commenced this action on February 29, 2012, alleging that defendants discriminated against him on account of his race when he was passed over for promotion to lieutenant in both 2007 and 2009, in favor of African-American officers.  (*See generally* Compl.)  After a motion to dismiss by defendants was granted in part by this court, which dismissed Wright's claim as to the 2007 failure to promote as well as his prima facie tort claim and Melissa Wright's loss of consortium claim, (Dkt. No. 14), Wright's remaining causes of action include claims pursuant to 42 U.S.C. §§ 1981 and 1983, the NYSHRL, and the IMC, all stemming from the 2009 failure to promote, (Compl.).

### III.  **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  <u>Discussion</u>

As an initial matter, the court must address defendants' argument

that Wright failed to commence this action prior to the expiration of the

applicable statute of limitations governing each of his claims.  Defendants

argue that all of Wright's claims are subject to a three-year statute of

limitations, and are therefore untimely.  (Dkt. No. 98, Attach. 1 at 5-9.)  In

response, Wright argues that all of his claims were timely commenced.

(Dkt. No. 114, Attach. 1 at 7-9.)  Further, specifically with respect to his

claim under 42 U.S.C. § 1981, Wright argues that it is governed by a four-

year statute of limitations, and not the three-year period that is applicable to

the remainder of his claims.  (*Id.* at 2-6.)  For the reasons that follow, the

court finds that Wright's section 1983 cause of action—to the extent it

alleges a violation of the Fourteenth Amendment—his NYSHRL claim, and

his claim pursuant to the IMC are untimely and thus dismissed.

Claims under both section 1983 and the NYSHRL are ordinarily

governed by a three-year statute of limitations.[4]  *See Johnson v. Dep't of Hous. Pres. & Dev.*, 218 F. App'x 5, 6 (2d Cir. 2007).  Generally, "a discrimination claim accrues from the date the claimant receives notice of the allegedly discriminatory decision."  *Singh v. Wells*, 445 F. App'x 373, 376-77 (2d Cir. 2011) (internal quotation marks and citation omitted); *see Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir. 1999) (holding, in the failure to promote context, that claim accrued when the plaintiff "knew or should have known that he had been passed over for promotion"); *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985) ("[T]imeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect.").

Wright's action was commenced on February 29, 2012.  (Compl.) Accordingly, if his claims accrued on or before February 28, 2009, they would be untimely.  Here, Vallely testified that he spoke to Wright "[p]rior to offering the position to [Byrd]," in order "to notify him that [Byrd] was getting

---

[4] With respect to Wright's asserted claim under the IMC, this court has already ruled that it would also be subject to a three-year limitations period.  (Dkt. No. 14 at 9-11.) Therefore, although the parties have submitted arguments regarding whether or not the IMC creates a private right of action, (Dkt. No. 98, Attach. 1 at 5 n.1; Dkt. No. 114, Attach. 1 at 9-10), consideration of these arguments is unnecessary, as such a claim would be untimely in any event.

the [promotion]." (Dkt. No, 98, Attach. 18 at 17.) This is corroborated by Vallely's affidavit, in which he states that he offered the position to Byrd on or before February 27, 2009, and that he communicated this decision to Wright before offering the job to Byrd. (Dkt. No. 98, Attach. 4 at 3.) Further, Wright himself testified that he was informed by Vallely "about a week, week and a half, two weeks before [Byrd was] sworn in" that he had been passed over for the promotion in favor of Byrd. (Dkt. No. 98, Attach. 10 at 38-39.) As it appears that Byrd took his oath of office, and was sworn in, on March 5, 2009, (Dkt. No. 117, Attach. 9 at 2), then, even viewing the facts in the light most favorable to Wright, he "receive[d] notice of the allegedly discriminatory decision," and thus his claims accrued, at the latest, one week before March 5, 2009, and they are therefore untimely. *Singh*, 445 F. App'x at 376-77. Although Wright attempts to create a question of fact as to when Byrd's promotion became official or took effect, this is of no moment, as "the limitations period begins to run when the plaintiff receives notice of the adverse action," and not when such decision is "officially announced." *Cetina v. Longworth*, 583 F. App'x 1, 3 (2d Cir.

2014).[5]  Accordingly, Wright's section 1983, HRL, and IMC claims are

dismissed as untimely.[6]

Alternatively, Wright's claims fail on the merits.  Defendants further

---

[5] Further, the court is unpersuaded by Wright's argument that, pursuant to recent caselaw from the Supreme Court of the United States, "the date the plaintiff learns of the wrong is irrelevant," and, instead, his claims accrued when the promotion became effective. (Dkt. No. 114, Attach. 1 at 7-9 (citing *Gabelli v. Sec. & Exch. Comm'n*, 133 S. Ct. 1216, 1220-21 (2013).)  The case relied upon by Wright is not a discrimination case, and thus, although he argues that it could apply to the instant type of action, in the absence of any authority holding as much—and considering the established precedent of Second Circuit caselaw expressly holding that failure to promote claims accrue when the plaintiff knew or should have known that he had been passed over for promotion—the court declines to extend the proposition in *Gabelli* to this case.

[6] The parties also spend a significant portion of their memoranda arguing whether Wright's section 1981 claim—either brought by itself or pursuant to section 1983—would be subject to a three- or four-year statute of limitations.  (Dkt. No. 98, Attach. 1 at 5-9; Dkt. No. 114, Attach. 1 at 2-6.)  This is a murky, nuanced issue, with no clear guidance from the Second Circuit.  Briefly, although a claim pursuant to 42 U.S.C. § 1981 is ordinarily not properly brought against state actors, *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989), a plaintiff may bring a claim alleging a violation of section 1981 rights against state actors pursuant to section 1983, *see Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).  Under *Jones v. R.R. Donnelley & Sons Co.*, section 1981 actions that are "made possible by" the amendments contained in the Civil Rights Act of 1991 are governed by 28 U.S.C. § 1658, which provides a "catch-all" four-year limitations period for claims "arising under an Act of Congress enacted" after December 1, 1990.  541 U.S. 369, 372-73, 382 (2004).  "Only where an employee is denied a promotion that rises to the level of an opportunity for a new and distinct relation between the employee and the employer is the claim actionable under Section 1981 prior to its amendment in 1991."  *Hunter v. Citibank, N.A.*, 862 F. Supp. 902, 907 (E.D.N.Y. 1994), *aff'd*, 60 F.3d 810 (2d Cir. 1995).  This is a fact-specific inquiry.  *See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1411 (2d Cir. 1993).  The parties dispute whether Wright's promotion would have been a new and distinct relation—and thus whether his claim arises under the amendments to section 1981—and therefore which statute of limitations applies.  In any event, the applicable statute of limitations on this claim, to the extent Wright's section 1981 claim is brought pursuant to section 1983, is of no moment, as the court concludes below that defendants are entitled to summary judgment on the alternative basis that Wright's claims fail on the merits.  Accordingly, Wright's motion to amend his complaint to clarify that his claim for a violation of section 1981 rights is brought pursuant to 1983, (Dkt. No. 114, Attach. 2; Dkt. No. 114, Attach. 3), is denied as futile, and his motion to strike, (Dkt. No. 121), which deals only with evidence relevant to the applicable statute of limitations on this claim, is denied as moot.

argue that they are entitled to summary judgment because there were legitimate, non-discriminatory reasons for the decision to promote Byrd over Wright, and Wright has failed to provide record evidence from which a reasonable juror could conclude that these reasons were a pretext for race discrimination.  (Dkt. No. 98, Attach. 1 at 9-20.)  In response, Wright argues that the true motivation for the promotion decision was invidious discrimination.  (Dkt. No. 114, Attach. 1 at 10-19.)  For the following reasons, the court agrees with defendants.

Discrimination claims—whether brought under 42 U.S.C. § 1981, § 1983, or the NYSHRL—are analyzed under the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996).  To satisfy this initial burden, the plaintiff "'must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  *Brown*

*v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).[7]

"A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant comes forward with a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, he must show,

─────────────────

[7] In the specific context of a failure to promote, the elements have similarly been laid out as requiring the plaintiff to establish:

> that (1) [he] is a member of a protected class; (2) [he] "applied and was qualified for a job for which the employer was seeking applicants"; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.

*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell Douglas*, 411 U.S. at 802).

"without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination."  *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  As further explained by the Supreme Court, to demonstrate pretext, a plaintiff must show "*both* that the [employer's offered] reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment.  *See Holcomb*, 521 F.3d at 137; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

Here, defendants do not dispute that Wright has established a prima facie case.  (Dkt. No. 98, Attach. 1 at 10.)  They instead argue that they have proffered legitimate, non-discriminatory reasons for not choosing Wright for the promotion to lieutenant in early 2009, and that Wright cannot demonstrate that these reasons are a pretext for race discrimination.  (*Id.* at 10-20.)  Specifically, defendants contend that the promotion of Byrd over

Wright was justified because "Byrd's skill at community policing was unmatched in the Department," and point to Vallely's testimony regarding his view that Byrd's "model of community policing was superior to anyone's." (*Id.* at 10; Dkt. No. 98, Attach. 18 at 19-20.) Additionally, Vallely noted that Byrd "had more recent experience supervising officers on the line, [and] had shown leadership and ambition in pursuing both a Bachelor's and Master's degree in police science and attending the FBI Academy." (Dkt. No. 98, Attach. 4 at 3.) Wright does not appear to dispute these facts, nor does he directly challenge Byrd's underlying qualifications for the position, aside from stating that "Byrd did not submit any letters of commendation or recommendation [to] the promotion committee while [Wright] did," (Dkt. No. 114 at 7), without explaining the relevance of this assertion or demonstrating that letters of recommendation were germane to the promotion decision. The court finds that defendants' stated reasons thus constitute a legitimate basis for the promotion decision.

As noted above, Wright does not directly attack Byrd's qualifications for the position, or argue, for example, that Wright was more qualified. Instead, Wright asserts that there is sufficient evidence in the record from which a reasonable jury could conclude that defendants' stated reasons

were pretextual, and that the real reason Wright was passed over was defendants' discriminatory animus based on race. (Dkt. No. 114, Attach. 1 at 10-19.) As limited by Wright's response to defendants' motion, he offers a host of things that, he argues, serve to demonstrate pretext.

First, Wright references Vallely's comment that he would "need to show clear and convincing evidence why [Wright was] the better candidate or [he would] have to promote [Byrd]." (*Id.* at 11; Dkt. No. 103, Attach. 1 at 54.) Wright also notes that, at some point after the promotion had occurred, Barber remarked that "the decision was made across the street, and he nodded his head towards . . . City Hall." (Dkt. No. 114, Attach. 1 at 11; Dkt. No. 103, Attach. 1 at 90.) The court finds Wright's reliance on these statements to be unavailing. Regarding Vallely's comment, Vallely did not recall ever making such statement to Wright. (Dkt. No. 108 at 116-17.) However, even if this disputed fact were resolved in Wright's favor, and the statement was, in fact, made, Wright relies purely on speculation and innuendo in arguing that this comment somehow meant Wright would be passed over because of his race. The comment is race neutral on its face, and Wright offers no additional facts about its context from which a reasonable juror could conclude that Vallely was invoking race as the

reason he would need to justify Wright's promotion.  To the contrary,

Vallely later testified that race played no role in his promotion decision, and

Wright has offered nothing more than mere speculation that it did.  (Dkt.

No. 108 at 137-38, 141-42); *see Putnam v. Unity Health Sys.*, 348 F.3d

732, 736 (8th Cir. 2003) (noting that "race-neutral comments . . . are not

evidence that [challenged employment action] was pretextual").

　　　With respect to Barber's comment, Wright's argument appears to be

that it demonstrates that Peterson influenced Vallely's promotion decision

by suggesting he use a "matrix" to compare the candidates' qualifications,

this "matrix" included "community policing" as one factor, and "community

policing" actually refers to unfairly favoring minority candidates.  (Dkt. No.

114, Attach. 1 at 14-15.)  Aside from the attenuated nature of the

connection Wright seeks to make, he has not pointed to facts

demonstrating that Barber was involved in the ultimate promotion decision

here, such that he would be aware of the relevant considerations, and,

further, "[s]tatements made or actions taken by nondecisionmakers, or

actions unrelated to the decisionmaking process, cannot be used to

support an allegation of pretext."  *Wado v. Xerox Corp.*, 991 F. Supp. 174,

212 (W.D.N.Y. 1998) *aff'd sub nom. Smith v. Xerox Corp.*, 196 F.3d 358

(2d Cir. 1999); *see Sloan v. United Techs. Corp.*, No. 14-396-CV, 2015 WL 895419, at *1 (2d Cir. Mar. 4, 2015) (noting that "stray remarks [that] were . . . facially race neutral" do not "support an inference of discriminatory causation").

Next, Wright discusses the "historical evidence" which, in his view, indicates that "decisions as to who is promoted are made and/or influenced by the Mayor and/or the City administration." (Dkt. No. 114, Attach. 1 at 13-14.) Once again, even if this were found to be true, what is lacking in Wright's submissions is any connection to a racial motivation. Wright asserts that he "was initially passed over for promotion to lieutenant in favor of an African-America[n] when Pete Tyler was promoted to such position in 2007." (Dkt. No. 114, Attach. 1 at 12.) However, Wright merely concludes that this constituted discriminatory treatment, and offers nothing that would support a determination that the earlier incident was race motivated, other than the mere fact that an African-American was chosen for a promotion instead of Wright, a Caucasian.[8]

_____

[8] Although sworn statements concerning past instances of racial discrimination "may constitute relevant background evidence in a proceeding in which the status of a current [incident] is at issue," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) (internal quotation marks and citations omitted), Wright has not pointed to any such sworn statements here with respect to the 2007 promotion. Further, there are limits to this principle. *See id.* at 112, 118, 120-21. Specifically, the court must examine whether the "pre— and post-limitations

16

Next, Wright references the City of Ithaca's diversity policy and its use of a workforce diversity advisory committee, presumably arguing that the City had a policy of promoting minorities over non-minorities, regardless of qualification.  (Dkt. No. 114, Attach. 1 at 11-12.)  However, Wright relies on the language from a "Candidate Hiring/Tracking Form" which states that, when a hiring official "has a choice of job candidates that includes members of . . . more than one race," the official "is expected to keep in mind the City's commitment to workforce diversity with regard to outreach and selection."[9]  (*Id.* at 11; Dkt. No. 112, Attach. 3 at 14.)  The Diversity Plan itself merely outlines the City of Ithaca's "goal to reflect . . . diversity" and "ensure equal access to opportunity in employment."  (Dkt. No. 112, Attach. 3 at 5.)  This plan "in no way suggests that the

---

period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  *Id.* at 120.  While Wright argues that the 2007 failure to promote was discriminatory because of a comment by Signer, the former police chief, that she "had to promote minorities," (Dkt. No. 114, Attach. 1 at 12-14), the probative value of this incident to the 2009 failure to promote, at issue here, is minimal, as the two promotions were made two years apart by different decisionmakers.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380, 383-84 (2008) (questioning the relevance, under Federal Rule of Evidence 403, of allegations of "discrimination at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff").

[9] With respect to the form referenced by Wright, the court acknowledges that, as pointed out by defendants, (Dkt. No. 117 at 8), Magistrate Judge Therese Wiley Dancks, in ruling on defendants' motion for a protective order, found that such form did "not apply to the promotion at issue in this case," (Dkt. No. 77, Attach. 1 at 5), and thus Wright's reliance on it as relevant evidence is specious.

appointment of [officers] should, or would, be race-[]based."  *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir. 1991); *see Jones v. Bernanke*, 493 F. Supp. 2d 18, 29 (D.D.C. 2007) ("[A]n employer's statement that it is committed to diversity if expressed in terms of creating opportunities for employees of different races . . . is not proof of discriminatory motive with respect to any specific hiring decision." (internal quotation marks and citation omitted)), *aff'd on other grounds*, 557 F.3d 670 (D.C. Cir. 2009); *Blanke v. Rochester Tel. Corp.*, 36 F. Supp. 2d 589, 597-98 (W.D.N.Y. 1999) (holding that it would be unreasonable "[t]o infer from . . . generalized statements [regarding goals of increasing the number of minority employees] that [the defendant] deliberately terminated [the] plaintiff to make room for a minority employee").

Lastly, Wright appears to argue that Byrd did not merit the promotion because of past allegations of misconduct against him, and insinuates that potential misconduct against non-minority officers was investigated more vigorously than similar allegations against minority officers.  (Dkt. No. 114, Attach. 1 at 15-18.)  He also points to "rumors" within the police department about potential past misconduct by Byrd.  (*Id.* at 17.)  However, Wright offers no evidence regarding the frequency with which the Ithaca Police

Department conducted investigations of allegations against minority versus non-minority officers. He simply concludes that "[t]he failure to investigate Byrd was due to his race as clearly shown by the defendants' disparate treatment of white IPD officers in matters relating to investigations of potential misconduct," supported only by a reference to one prior investigation of unrelated misconduct by a non-minority officer that, in his view, was investigated more thoroughly than the allegations against Byrd. (*Id.* at 18.) Wright speculates that "[s]hould the fact finder conclude that defendants . . . failed to conduct an investigation into the allegations [against Byrd] because of his race, then it would be fair for them to conclude that his race, at least in part, also played a role in the decisions to promote him." (*Id.*) Drawing such a conclusion based on these collateral matters requires a logical jump that would not be reasonable given the evidence currently before the court—or, more pointedly, the lack of evidence showing that Wright was passed over for the 2009 promotion to lieutenant because of his race. It is well settled that "'conclusory allegations or unsubstantiated speculation' [are in]sufficient to raise a triable issue of fact as to whether . . . discriminatory animus" played a role in an adverse employment action, and the tangential connection that

Wright hopes to draw here simply lacks evidentiary support. *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)); *see Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (finding "purely speculative" assertions of discriminatory animus insufficient to defeat summary judgment). The court finds that Wright has offered nothing more than mere innuendo that his race must have played a role in this particular promotion decision, and points to no evidence from which a rational jury could reasonably conclude that defendants' stated reasons were pretextual. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (recognizing that plaintiff's reliance on "stray remarks," "statements by non-decisionmakers," and "statements . . . unrelated to the decisional process itself" did not suffice to establish a prima facie case under Title VII framework); *Clough v. City of New Haven*, 29 F. App'x 756, 759 (2d Cir. 2002) (affirming dismissal of discrimination claims where the plaintiff made no "showing that he had qualifications superior to those of any of the minorities allegedly promoted in his stead and that the promotion process was rigged to prevent non-minorities like himself from being promoted"); *Evans v. Golub Corp.*, 29 F. Supp. 2d 194, 206 (S.D.N.Y.

1998) (dismissing race discrimination claim where "[t]here [we]re no discriminatory comments or any other concrete evidence in the record to support a racial discrimination claim"). For all of these reasons, defendants' motion for summary judgment is granted.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 98) is **GRANTED** and Wright's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Wright's motion to strike (Dkt. No. 121) is **DENIED** as moot; and it is further

**ORDERED** that Wright's motion to amend (Dkt. No. 114, Attach. 2) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 20, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court